IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROWENA GOREE, | ) | CIV- F-04-6734 AWI LJO |
| | ) | |
| Plaintiff, | ) | ORDER ON DEFENDANT'S |
| | ) | MOTION FOR SUMMARY |
| v. | ) | JUDGMENT |
| | ) | |
| KELLY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case stems from the termination of pro se Plaintiff Rowena Goree ("Goree")'s employment with Defendant Kelly Services, Inc. ("Kelly"). Goree alleges that her termination was discriminatory. Kelly now moves for summary judgment. Goree did not file a timely opposition or notice of non-opposition.[1] For the reasons that follow, Kelly's motion will be granted.

---

[1] After the Court took this matter under submission due to Goree's failure to timely file an opposition, see Docket No. 20, a note addressed to defense counsel was filed with the court. See Docket No. 22. The letter is dated September 22, 2005, and indicates that it is a reply and reads in its entirety:

I received your statements on Defendant's reply brief in support of its motion for summary judgment or, in the alternative, summary adjudication. I am sending this as my reply. The information I have and find is that this is a untrue statement made and these forms by Kelly Services and wish to continue this matter in court.

Docket No. 22.

This is not a proper opposition, has no citation to legal authorities, provides no evidence, and is untimely. The Court will not consider Goree's September 22, 2005, letter in resolving this motion.

## FACTUAL BACKGROUND

Kelly is a temporary staffing solutions company that meets a variety of temporary staffing needs in various industries. Mann Declaration at ¶ 2. Generally, a person wishing to be placed on temporary assignments through Kelly: (1) fills out an application; (2) is interviewed; and (3) is entered into a computer system as "available" and "active." Id. When a Kelly customer requests a temporary employee with certain qualifications, Kelly's database is used to find a match. Id. Sometimes, Kelly employees call into Kelly for assignments and a Kelly supervisor searches the database for job openings to find a suitable match. Id. Once Kelly contacts an employee, the employee goes to the site and completes the work assigned. Id. During an assignment, the Kelly employee directs all personnel issues to Kelly. Id. at ¶ 3. Once an assignment is complete, Kelly requests feedback on the employee's performance from the customer. Id. Generally that feedback is placed in the employee's record and the employee is placed back on the "available" and "active" list. Id. If an employee fails to call in as available or does not respond to messages from Kelly, the employee is terminated but is considered "eligible for rehire." Id. at ¶ 4. If such an employee later calls in, Kelly will generally rehire the employee if there is a suitable position available. Id. If, however, an employee is terminated for performance reasons, the employee is classified as "ineligible for rehire," and will not be placed through Kelly again. Id. at ¶ 5.

Goree was hired by Kelly as a temporary employee in June 2000. Id. at ¶ 6. During the next two and one half years, Kelly placed Goree with nine customers. See id. Kelly's second assignment for Goree was with CIGNA Healthcare in July 2000. Id. at ¶ 7. The CIGNA assignment was long term as it was scheduled to last longer than 180 days. Id. After her first day, Goree called Kelly and reported that her assignment was finished. Id. A CIGNA representative later called Kelly and said that they were having problems with Goree and did not want her to return for this or any other assignment at CIGNA. Id.; Defendant's Undisputed Material Fact ("DUMF") No. 3.

Goree's next assignment was with Golden State Vintners in August 2000. Mann Declaration at ¶ 8. After approximately ten days, Golden State Vintners informed Kelly that they did not want Goree to return to work for them again. Id.; DUMF No. 5.

After her experiences with CIGNA and Golden State Vintners, Goree successfully completed six short-term assignments. Mann Declaration at ¶ 8. In November 2001, Goree was assigned to Moore Wallace. Id. at ¶ 9. Moore Wallace informed Kelly that Goree had walked off the job. Id. Goree then completed another short-term assignment.

In June 2002, Kelly placed Goree with Frito Lay. Id. at ¶ 10; DUMF No. 6. After one day on the assignment, Frito Lay informed Kelly that they did not want Goree returning to work for them. Mann Declaration at ¶ 10; DUMF No. 7.

In November 2002, Kelly placed Goree with Service Force. DUMF No. 8. On Goree's first day, Service Force called Kelly and reported that they did not want Goree returning to work for them again. Mann Declaration at ¶ 11; DUMF No. 9.

After the Service Force assignment, Kelly terminated Goree's employment and informed Goree that she was ineligible for rehire. DUMF No. 10. Janie Mann, Kelly's branch manager, told Goree that she was being fired for performance problems and that Goree was not to call in for assignments. Mann Declaration at ¶ 12; DUMF 11. Despite her termination, Goree continued to call in for assignments, and each time she was informed that she was terminated for performance reasons and not eligible for rehire. Mann Declaration at ¶ 14. No one at the Kelly branch office in Visalia, California (where Goree was employed) has been retained after four customers have requested that the employee not return to work for them again. Id. at ¶ 13; DUMF No. 13. Goree never informed anyone at Kelly of her religion. DUMF No. 12.

Goree filed her complaint with the California Department of Fair Employment and Housing ("DFEH") on April 1, 2004, and indicated on that complaint that she wished her charge to be filed with the Federal Equal Employment Opportunity Commission ("EEOC"). Exhibit C to Klick Declaration. Goree's right-to-sue letter from the DFEH related only to disability

3

discrimination. DUMF No. 15. Goree received her right-to-sue letter from DFEH on June 28, 2004. Exhibit D to Klick Declaration. Goree received a right-to-sue letter from the EEOC on October 8, 2004. See Court Docket No. 2.[2] On November 24, 2004, Goree filed suit in this Court and alleged that she was discriminated against because of her race, gender, religion, medical condition and disability. Plaintiff does not identify whether she is suing under Title VII and the American's with Disabilities Act ("ADA") or the California Fair Employment and Housing Act ("FEHA"). Kelly construes Goree's complaint as alleging violations of only Title VII and the ADA and now moves for summary judgment on those claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985). Where summary judgment requires the court to apply law to undisputed facts, it is a mixed question of law and fact. See Sousa v.Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan, 252 F. Supp.2d 1046, 1049 (E.D. Cal. 2002). Where the case turns on a mixed question of law and fact and the only dispute relates to the legal significance of the undisputed facts, the controversy for trial collapses into a question of law that is appropriate for disposition on summary judgment. See Union Sch. Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir. 1994); Sousa, 252 F.Supp.2d at 1049.

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[2] DUMF No. 14 states that Goree did not receive a right-to-sue letter from the EEOC. However, document no. 2 in the court's docket is Goree's complaint. Behind her complaint is a form letter from the EEOC indicating that the EEOC has adopted the state agency's findings and that Goree has 90 days in which to file a lawsuit. Thus, Goree did receive her right-to-sue letter from the EEOC and DUMF No. 14 is incorrect.

4

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets it initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins., 210 F.3d at 1103; Nolan v. Cleland, 686 F.2d 806, 812 (9th Cir. 1982); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  A fact is "material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A "genuine issue of material fact" arises when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248-49; Thrifty Oil, 322 F.3d at 1046.

In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of

5

specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Willis v. Pacific Maritime Ass'n, 244 F.3d 675, 682 (9th Cir. 2001). However, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; Hopper v. City of Pasco, 248 F.3d 1067, 1087 (9th Cir. 2001). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587; Mende v. Dun & Bradstreet, Inc., 650 F.2d 129, 132 (9th Cir. 1982).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Rule 56(c); Fortyune, 364 F.3d at 1079-80. The court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Mayweathers v. Terhune, 328 F.Supp.2d 1086, 1092-93 (E.D. Cal. 2004); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

6

show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

## DEEMED ADMISSIONS

Under Rule of Civil Procedure 36(a), "A party may serve upon any other party a written request for the admission . . . of the truth of any matters, [not privileged, relevant to the claims or defense of any party,] set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . ." Fed. R. Civ. P. 36(a).  "The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." Asea, Inc. v. Southern Pacific Transportation Co., 669 F.2d 1242, 1245 (9th Cir. 1982).  Thus, Rule 36(a) "permits requests for admission addressing questions of mixed law and fact," Marchand v. Mercy Medical Ctr., 22 F.3d 933, 937 n.4 (9th Cir. 1994), and "allows litigants to request admissions as to a broad range of matters, including ultimate facts . . . ." Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n, 333 F.Supp.2d 975, 984 (D. Or. 2004) (quoting In re Carney, 258 F.3d 415, 419 (5th Cir. 2001)); see, e.g., Casey v. Albertson's Inc., 362 F.3d 1254, 1256 (9th Cir. 2004) (deeming admitted that (1) defendant did not discriminate against her on the basis of gender; (2) defendant did not discriminate against her on the basis of her marital status; (3) defendant did not discriminate against her on the basis of her pregnancy; and (4) defendant did not make the decision to transfer her); 999 Corp. v. C.I.T. Corp., 776 F.2d 866, 868-69 (9th Cir. 1985) (enforcing an admission that there was "an agreement" even though whether an agreement existed was an ultimate issue in case). Furthermore, if a party fails to answer requests for admission within 30 days, the requested items are deemed admitted.  Fed. R. Civ. Pro. 36(a); Casey, 362 F.3d at 1256; Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995); American Tech. Corp. v. Mah, 174 F.R.D. 687, 689 (D. Nev.

1997). Any matter so admitted is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Fed. R. Civ. Pro. 36(b); Hadley, 45 F.3d at 1348; Echo Drain v. Newsted, 307 F. Supp. 2d 1116, 1122 (C.D. Cal. 2003); Mah, 174 F.R.D. at 689. Rule 36 admissions, "even default admission, can serve as the factual predicate for summary judgment." United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987); see Karras v. Karras, 16 F.3d 245, 247 (8th Cir. 1994); Donovan v. Carls Drug Co., Inc., 703 F.2d 650, 651 (2d Cir. 1983); Cereghino v. Boeing Co., 873 F.Supp. 398, 403 (D. Or. 1994); see also Fed. R. Civ. Pro. 56(c). "Evidence inconsistent with a Rule 36 admission is properly excluded." 999 Corp., 776 F.2d at 869-870; Tillamook Country Smoker, 333 F.Supp.2d at 984.

Here, Kelly propounded eight requests for admission on Goree on May 11, 2005, and Goree responded on May 24, 2005. See Klick Declaration at ¶ 5. Goree did not answer or respond to six of the eight requests. Accordingly, the following facts are deemed admitted and are conclusively established: (1) Goree has not worked for Kelly Services, Inc. since November 23, 2002; (2) on November 23, 2002, Kelly informed Goree that she was terminated for performance reasons; (3) on November 23, 2002, Kelly informed Goree that she was ineligible for re-hire; (4) Goree never told anyone at Kelly her religion; (5) Goree did not have cancer or a cancer related condition while she was employed by Kelly; and (6) Goree did not have a genetic disorder or related condition while employed by Kelly. See Fed. R. Civ. Pro. 36(a), (b); Casey, 362 F.3d at 1256; Hadley, 45 F.3d at 1348; Echo Drain, 307 F.Supp.2d at 1122; Mah, 174 F.R.D. at 689.

**Title VII Discrimination**

In pertinent part, Title VII provides:

(a) Employer practices. It shall be an unlawful employment practice for an employer--
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 USCS § 2000e-2(a)(1).

A Title VII plaintiff must exhaust administrative remedies. See B.K.B. v. Maui Police Department, 276 F.3d 1091, 1099 (9th Cir. 2002). "As a prerequisite to suite, both the ADA and Title VII both require the filing of a charge and the issuance of a right-to-sue letter." O'Loughlin v. County of Orange, 229 F.3d 871, 876 (9th Cir. 2000); see also Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 715 n.1 (9th Cir. 2001). To exhaust administrative remedies, a plaintiff must first file a charge with the Equal Opportunity Employment Commission ("EEOC"), or the appropriate state agency, giving the agency an opportunity to investigate the charge. B.K.B., 276 F.3d at 1099. A plaintiff need not list each and every allegation of discrimination in the EEOC charge. Id. However, "Allegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." Id. at1100. In such a case, subject matter jurisdiction will extend over all allegations that either "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id. An employment discrimination charge need not be plead with legal precision, it must, however, be sufficient to notify the agency that discrimination is being charged. See Sommantino v. United States, 255 F.3d 704, 710 (9th Cir. 2001). Further, a plaintiff claiming Title VII discrimination must file her discrimination charge with the EEOC "within [180] days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); Kang v. U. Lim America, Inc., 296 F.3d 810, 818 n.7 (9th Cir. 2002); Laquaglia v. Rio Hotel & Casino, 186 F.3d 1172, 1174 (9th Cir. 1999). However, if a plaintiff initially files proceedings with a state agency, the time limit for EEOC filing is extended to 300 days. 42 U.S.C. § 2000e-5(e)(1); Kang, 296 F.3d at 818 n.7; Laquaglia, 186 F.3d at 1174. The failure to file a discrimination complaint with the EEOC within the 180 day or, if applicable, the 300 day statute of limitations period is a defense to Title VII discrimination claims. Hernandez v. Spacelabs Med., Inc., 343 F.3d 1107, 1115-16 (9th Cir. 2003). Additionally, the failure to rehire or reinstate subsequent to an allegedly discriminatory firing, absent a new and discrete act

of discrimination in the rehire itself, cannot resurrect an old, time-barred discriminatory act. See Hargett v. Valley Fed. Sav. Bank, 60 F.3d 754, 763-64 n.10 (11th Cir. 1995); EEOC v. City of Norfolk Police Dept., 45 F.3d 80, 84 (4th Cir. 1995); Collins v. United Airlines, Inc., 514 F.2d 594, 596 (9th Cir. 1976).

      To survive summary judgment on a disparate treatment claim, a plaintiff "must establish that his job performance was satisfactory and provide evidence, either direct or circumstantial, to support a reasonable inference that his termination was discriminatory." Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004). The quantum of evidence that must be produced is "very little," but it must be is more than "purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars." Petersen, 358 F.3d at 603; Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988). The evidence in a disparate impact claim at summary judgment is analyzed through the *McDonnell Douglas* burden shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Bodett v. Coxom, Inc., 366 F.3d 736, 743 (9th Cir. 2004); Petersen, 358 F.3d at 603. First, a plaintiff must establish a prima facie case of discrimination by showing that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004); Bodett, 366 F.3d at 743, Petersen, 358 F.3d at 603. Once a prima facie case is made, a presumption of unlawful discrimination is created and the burden shifts to defendant to produce some evidence of a legitimate, nondiscriminatory reason for the adverse employment action. Fonseca, 374 F.3d at 847; Bodett, 366 F.3d at 743. If the defendant meets this burden, the presumption of unlawful discrimination drops away and the burden then shifts to plaintiff to show that the defendant's non-discriminatory reason is merely pretext. Fonseca, 374 F.3d at 847; Bodett, 366 F.3d at 743. The plaintiff can prove pretext, through circumstantial or direct

evidence, either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Fonseca, 374 F.3d at 847; Bodett, 366 F.3d at 743. The burden of persuasion remains with the plaintiff at all times. Bodett, 366 F.3d at 743. Summary judgment is appropriate where the plaintiff fails to make his prima facie case, Petersen, 358 F.3d at 603, or where plaintiff fails to produce sufficient evidence that a non-discriminatory reason is pretext. Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 663-64 (9th Cir. 2002).

*Defendant's Motion*

Kelly has moved for summary judgment on Goree's Title VII disparate treatment claims on the basis that she failed to follow Title VII's administrative procedures, she cannot establish a prima facie case, and she cannot show that Kelly's non-discriminatory reason for termination, poor work performance, is pretext. Goree has filed no opposition or produced any evidence to challenge summary judgment.

*Discussion*

Kelly's arguments are correct and summary judgment is appropriate. Through the undisputed facts and conclusively established admissions, Goree's employment was terminated on November 23, 2002. Goree did not file her complaint with the DFEH until April 1, 2004. 300 days back from April 1, 2004, is June 6, 2003. Goree's November 2002 termination is well beyond June 2003 and the 300 day statute of limitations period. The DFEH complaint does indicate that Goree was denied employment as recently as March 2004. See Exhibit E. Additionally, evidence indicates that Goree attempted to call for work assignments from Kelly several times after her November 2002 termination. See Mann Declaration at ¶ 14. However, once a Kelly employee is deemed ineligible for rehire because of performance issues, that employee will not be rehired. See id. at ¶ 4. Goree was informed that she was terminated for performance reasons, that she was not eligible for rehire, and not to call requesting assignments;

yet, it appears that Goree continued to try to call in for assignments. See id. at ¶¶ 12, 14.  Under these circumstances, Goree was attempting to be rehired or reinstated, and there is no evidence of discrimination with respect to the refusal to rehire.  Thus, Goree's attempts at rehire are insufficient to revive her initial termination. See Hargett, 60 F.3d at 763-64 n.10; City of Norfolk Police, 45 F.3d at 84; Collins, 514 F.2d at 596.  Because Goree did not complain to the EEOC about her November 23, 2002 termination within 300 days, her termination cannot form the basis of a Title VII discrimination claim.  42 U.S.C. § 2000e-5(e)(1); Hernandez, 343 F.3d at 1115-16; Kang, 296 F.3d at 818 n.7; Laquaglia, 186 F.3d at 1174.

      Even if requests for re-employment may be considered separate and discrete acts of discrimination, Goree has not made a prima facie showing of discrimination.  There is absolutely no evidence that similarly situated individuals outside Goree's protected class (race, sex, or religion) were treated more favorably, nor is there evidence of other circumstances surrounding Goree's termination that give rise to an inference of discrimination. Fonseca, 374 F.3d at 847; Bodett, 366 F.3d at 743.  In fact, with respect to religious discrimination, Goree never told anyone at Kelly of her religion.[3]  Summary judgment on Goree's Title VII claims are also appropriate for her failure to make a prima facie case. See Petersen, 358 F.3d at 603.

      Finally, even if Goree made a prima facie case, Defendant has produced evidence of a non-discriminatory reason for termination: four clients of Kelly (CIGNA, Golden State Vintners, Frito Lay, and Service Force) all requested that Goree not be assigned to work for them again.  In fact, three of the four (CIGNA, Frito Lay, and Service Force) requested that Goree not return after only the first day.  Furthermore, none of Kelly's employees are retained when they receive four requests from clients that those employees not return. See Mann Declaration at ¶ 13; DUMF No. 13.  Kelly informed Goree that she was terminated and ineligible for rehire because of poor

---

[3]The inference from this evidence is that no one at Kelly knew of Goree's religion.  The Court fails to see how one can be terminated on the basis of one's religion when the employer is unaware of the employee's religion. Cf. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982) (no causal link for retaliation where employer was unaware of employee engaging in protected activity); Gunther v. Washington County, 623 F.2d 1303, 1316 (9th Cir. 1979) (same).

performance. Poor job performance constitutes a legitimate, non-discriminatory basis for termination. Aragon, 292 F.3d at 661; Bradley v. Harcourt Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996). There is nothing to suggest that Kelly's non-discriminatory basis for termination is pretext for discrimination. Thus, summary judgment is also appropriate since Goree has failed to show that Kelly's non-discriminatory reason for discharge was pretext.[4] See Aragon, 292 F.3d at 663-64.

## ADA DISABILITY DISCRIMINATION

Under the ADA, "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified person with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential job functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability with respect to an individual" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

The ADA incorporates the enforcement procedures applicable to actions under Title VII (42 U.S.C. § 2000e-5). 42 U.S.C. § 12117; EEOC v. Waffle House, Inc., 534 U.S. 279, 285-86 (2002); Santa Maria v. Pacific Bell, Inc., 202 F.3d 1170, 1176 (9th Cir. 2000); Dao v. Auchan

---

[4]In her complaint, Goree does not indicate whether she is bringing suit under Title VII or FEHA. Kelly has assumed that Goree is only proceeding under Federal law. Goree has done nothing to dispel this notion. However, even if Goree intended also to bring suit under FEHA, the result reached would not be different. California courts look to federal Title VII cases when interpreting similar provisions of FEHA. See Reno v. Baird, 18 Cal. 4th 640, 647-48 (1998). FEHA requires a plaintiff to file a DFEH complaint within one year of the occurrence of the unlawful practice or complained of conduct. See Cal. Gov't Code §12960(d); Schifando v. City of Los Angeles, 31 Cal.4th 1074, 1081-82 (2003). Goree was terminated in November 2002 and thus, had until November 2003 to file a complaint. Goree did not file her complaint until April 2004. Accordingly, the Title VII analysis above is equally applicable to any attempted FEHA claims in the complaint. See Brooks v. County of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).

13

Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996).  Accordingly, as a prerequisite to filing an ADA suit, a plaintiff must file a timely discrimination charge with the EEOC and receive a right-to-sue letter.  42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5(e)(1)); Douglas v. California Dept. of Youth Auth., 271 F.3d 812, 823 n.12 (9th Cir. 2001); O'Loughlin, 229 F.3d at 876; Santa Maria, 202 F.3d at 1176.  To be timely, a disability discrimination charge must be filed with the EEOC within 180 days after the alleged violation or within 300 days of the violation if the plaintiff initially institutes proceedings with an appropriate state agency.  42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5(e)(1)); Douglas, 271 F.3d at 823 n.12; Santa Maria, 202 F.3d at 1176.

In assessing ADA disparate treatment claims on summary judgment, courts utilize the burden-shifting framework of *McDonnell-Douglas*.  Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3 (2003); Snead v. Metropolitan Property & Casualty Ins. Co., 237 F.3d 1080, 1093 (9th Cir. 2001); Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999).  Initially, it is the plaintiff's burden to establish a *prima facie* case of disability discrimination.  Raytheon, 540 U.S. 50 n.3; Snead, 237 F.3d at 1093.  A plaintiff establishes a *prima facie* case under the ADA for failure to accommodate or for wrongful termination by showing: (1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) she was terminated or suffered an adverse employment action because of her disability.  Allen v. Pacific Bell, 348 F.3d 1113, 1114 (9th Cir. 2003); Nunes, 164 F.3d at 1246.  Once the plaintiff establishes her *prima facie* case, there is a presumption of discrimination and the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.  See Raytheon, 540 U.S. at 50 n.3; Snead, 237 F.3d at 1093.  If the employer meets this burden and articulates a nondiscriminatory reason, the presumption of discrimination disappears.  See Raytheon, 540 U.S. at 50 n.3.  The burden then shifts back to the plaintiff to establish that the nondiscriminatory reason proffered by the defendant is merely pretext for disability discrimination.  See Raytheon,

14

540 U.S. at 50 n.3; Snead, 237 F.3d at 1093. A plaintiff may establish pretext either by "directly persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." Snead, 237 F.3d at 1093. A plaintiff's failure to meet her burdens under the *McDonnell Douglas* framework entitles the defendant to summary judgment. See Collings v. Longview Fibre Co., 63 F.3d 828, 833-34 (9th Cir. 1995).

*Defendant's Motion*

Kelly has moved for summary judgment on Goree's ADA disparate treatment claims on the basis that she failed to follow the ADA's administrative procedures, she cannot establish a prima facie case, and she cannot show that the Kelly's non-discriminatory reason for termination, poor work performance, is pretext. Goree has filed no opposition or produced any evidence to challenge summary judgment.

*Discussion*

Kelly's arguments are correct and summary judgment is appropriate. As discussed above, Goree was terminated on November 23, 2002, but did not file a claim with DFEH until April 1, 2004. This is well beyond the 300 day statute of limitations, and summary judgment is appropriate. See 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5(e)(1)); Douglas, 271 F.3d at 823 n.12; Santa Maria, 202 F.3d at 1176.

Furthermore, even if Goree's complaint was timely, Goree has failed to make a prima facie showing of disability discrimination. Goree has offered absolutely no evidence that she is disabled within the meaning of the ADA and has provided no evidence that she was terminated because of disability.

Finally, even if Goree did make a prima facie case of disability discrimination, as explained above, Kelly has met its burden of showing a non-discriminatory reason for termination, poor work performance. There is no evidence to suggest that Kelly's legitimate, non-discriminatory reason is pretext. Because Goree failed to meet her burdens, summary

judgment on her ADA claims are appropriate.[5] See Snead, 237 F.3d at 1093-94; Collings, 63 F.3d at 833-34.

## CONCLUSION

Kelly has presented evidence that Goree was terminated in November 2002 and that the reason for termination was poor work performance. Goree has failed to file an opposition. Accordingly, Goree fails to show that she has complied with the administrative procedures of Title VII and the ADA. Furthermore, even if Goree complied, she has failed to make a prima facie case of race, sex, religion or disability discrimination under Title VII and the ADA. Finally, even if a prima facie case is assumed, Goree has failed to show that Kelly's legitimate, non-discriminatory reason for termination was pretext. Summary judgment in Defendant's favor on all claims is therefore appropriate.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Motion for Summary Judgment is GRANTED; and

2. The Clerk is directed to enter judgment for Defendant and to close the case.

IT IS SO ORDERED.

Dated:   October 27, 2005            /s/ Anthony W. Ishii
0m8i78                               UNITED STATES DISTRICT JUDGE

---

[5] In her complaint, Goree does not indicate whether she is bringing suit under the ADA or FEHA. Kelly has assumed that Goree is only proceeding under Federal law. Goree has done nothing to dispel this notion. However, even if Goree intended also to bring suit under FEHA, the result reached would not be different. California courts look to federal ADA cases when interpreting similar provisions of FEHA. See Allen, 348 F.3d at 1114 n.1; Reno v. Baird, 18 Cal. 4th 640, 647-648 (1998). It is true that under California law, an individual need only be limited in a major life activity, not "substantially limited," to be considered disabled. See Colmenares v. Braemer Country Club, Inc., 29 Cal.4th 1019 (2003). Even considering FEHA's expanded protection, Goree has produced no evidence of being limited in a major life activity. Also, FEHA requires a plaintiff to file a DFEH complaint within one year of the occurrence of the unlawful practice or complained of conduct. See Cal. Gov't Code §12960(d); Schifando v. City of Los Angeles, 31 Cal.4th 1074, 1081-82 (2003). Goree was terminated in November 2002 and thus, had until November 2003 to file a complaint. Goree did not file her complaint until April 2004. Accordingly, the ADA analysis above is equally applicable to any attempted FEHA claims in the complaint. See Bradley, 104 F.3d at 271.